### J. W. DERR v. J. F. DELLINGER and others.

The legal effect of a contract of sale, and a bond for title in pursuance thereof, is to create an equitable estate in the vendee, leaving the legal title in the vendor, in trust to secure the payment of the purchase money, and then in trust to convey to the vendee.

Such equitable estate may be annihilated by the act of the party holding the legal title, in passing it to a purchaser for valuable consideration, without notice; in which case, the owner of the equitable estate must look to the trustee for compensation. If the purchaser has notice, he takes the legal title subject to the equitable estate.

the day his bond falls due; nor because he did not pay the money himself,
One does not forfeit his equitable estate, by failing to make payment on

but procured another person to pay and take the deed in his own name, under a verbal trust for such owner; nor because the agreement between them, was not in writing, and void under the statute of Frauds; nor because such agreement was without consideration. The owner of such equitable estate will not forfeit the same for any of the foregoing reasons, or for all combined.

CIVIL ACTION, in the nature of *Ejectment*, tried before BUXTON, J., at Spring Term, 1876, of LINCOLN Superior Court.

The plaintiff filed a complaint in the ordinary form against the defendants to recover the possession of the *locus in quo.* Mrs. Hettie Smith, one of the defendants, filed an answer, alleging that the *locus in quo* was the property of herself and J. F. Dellinger, and that the other defendants were her tenants, and she claims title thereto, as follows:

That by a deed, dated January 15th, 1859, executed by J. F. & R. D. Johnson, the plaintiff obtained title to, and possession of, several tracts of land, among others, one known as the "Meadow tract;" and further, that she claims that the J. F. Dellinger tract which is in the possession of and owned by the defendant, is included in the "Meadow tract," or some of the other tracts attempted to be conveyed by the aforesaid deed.

That on January 13th, 1857, J. F. Johnson entered into a bond to make title to J. F. Dellinger for about one hundred and twenty-two acres of land, and Dellinger being unable to comply with the conditions of the bond, assigned the same to J. M. Smith, who did comply with said conditions, and received from J. F. & R. D. Johnson a deed in fee simple for said tract of land. This tract of land was devised by J. M. Smith to the defendant, and the same is now in her possession, except the tract owned by Dellinger. She supposes this land is the *locus in quo*, or a part thereof.

For a second ground of defence she alleges: That the deed under which the plaintiff claims is void because of the uncertainty of the description of the land attempted to be conveyed thereby.

That the plaintiff had full notice of said bond for title, and that he received from R. D. & J. F. Johnson, with full knowledge of the outstanding bond for title, to J. F. Dellinger.

R. D. & J. F. Johnson moved the court that they be made parties to the action, alleging that J. F. Johnson, prior to the execution of the deed from R. D. & J. F. Johnson to J. W. Derr, had contracted by bond to convey the *locus in quo* to J. F. Dellinger, upon payment of the purchase money, as stipulated in the bond, and that it was understood and agreed at the time of the execution of the deed to Derr, that if the Dellinger tract was paid for at the maturity of the notes as stated in the bond, that then J. F. & R. D. Johnson were to convey the land to Dellinger, and that if the notes were not paid, then the land was to belong to Derr. That they had conveyed the same piece of land to Derr and to Dellinger with warranty. That however the action might terminate they were liable on their warranty. They therefore prayed that they might be allowed to set up this defence, and that the deed from them to Derr might be reformed.

The motion was refused by the court and exception taken.

The plaintiff introduced a deed from R. D. & J. F. Johnson to himself, dated January 15th, 1859, and duly registered, conveying to him the *locus in quo*. He also introduced evidence as to the amount of damage he had sustained.

The defendants offered in evidence the bond for title made by J. F. Johnson to J. F. Dellinger; and offered to prove that Smith had paid for the land. The court rejected the evidence as to the payment of the purchase money by Smith, holding that no equity was set up in the answer, as it was not alleged that Dellinger had paid any part of the purchase money to Johnson prior to the purchase by Smith, or the conveyance to Derr. That the bond for title was assigned by Dellinger to Smith by parol, and there was no allegation of any consideration for the assignment.

The court instructed the jury that there was only one issue for them to try, and that was as to the amount of damages the plaintiff was entitled to recover; and declined to hear evidence upon any other issue.

There was a verdict for the plaintiff, whereupon defendant moved for a new trial. The rule was discharged and judgment rendered; thereupon the defendants appealed.

*Jones* ' *Johnston, Montgomery* and *Cobb*, for the appellants.
*Hoke & Shaw*, contra.

PEARSON, C. J. The legal effect of a contract of sale and a bond for title in pursuance thereof, is to create an equitable estate in the vendee, leaving the legal estate in the vendor in trust to secure the payment of the purchase money, and then in trust to convey to the vendee.

In our case Dellinger had the equitable estate, and the question is, what has become of it? How has it been lost and annihilated, as is assumed to be the fact, by the rejec-

tion of the evidence tending to show at one time it had an existence? We do not concur in the view taken of this case by his Honor.

The question recurs, how has Dellinger's equitable estate been annihilated? Such an effect may be produced by the act of the party holding the legal title in passing it to a a purchaser for valuable consideration without notice, then the "equitable estate perisheth for want of a legal estate to feed it," and the owner of the equitable estate must look to the trustee for compensation; but if the purchaser has notice, he takes the legal title subject to the equitable estate. Derr had notice of this outstanding bond for title; in other words, of this equitable estate, and took the legal title, subject to this equity. So the deed to Derr did not annihilate the equitable estate of Dellinger.

It is then said Dellinger forfeited his equitable estate by failing to make payment on the day his bond fell due. If this is to be taken in reference to time, suffice it, "time is not of the essence of a contract." *Falls* v. *Carpenter*. If it be taken that Dellinger did not himself pay the money, suffice it, "what you do by another you do yourself." It could make no difference whether the money was paid by Dellinger or Smith. The money was paid or *caused* to be paid by Dellinger, and was accepted as a performance of Dellinger's part of the contract. Again, it is said Smith paid no consideration, and his agreement with Dellinger to pay the purchase money for him and take the deed, was "*nudum pactum.*" It is true, Smith could have refused to comply with this agreement, but he chose to perfect it by paying the money and taking a deed from the Johnsons. We are at a loss to see any ground for the notion that this arrangement between Dellinger and Smith relieved Derr from the trust with which the estate was burthened, when he acquired the legal title. Suppose Smith had paid Dellinger $50 for the bargain, or that Dellinger had paid Smith $50 to take

the bargain off his hands and relieve him from his notes; or suppose they had agreed that inasmuch as Dellinger could not pay for the land, he would, without any consideration, let Smith have the benefit of the contract of sale, provided he would pay the purchase money, how does this in anywise concern Derr or affect his rights?

Again it is said the agreement between Dellinger and Smith is not in writing. Admit it to be true that under the statute of frauds this parol agreement was void, and that neither party could have compelled the other to a specific performance; still as the parties chose to perform it, and as the Johnsons have executed a deed, and taken up the title bond for the land without requiring " an assignment of the bond in writing," we are at a loss to see how this concerns the plaintiff, or in anywise relieves him from the burthen of the trust.

As a dernier resort—a last effort—it was urged by Mr. Hoke in his very able and ingenious argument, " the bond for title is executed by only one of the Johnsons, and Dellinger acquired, under the contract of sale, an equitable estate in one undivided moiety only." Suffice it, there was evidence tending to show that James F. Johnson, in making the contract of sale to Dellinger, acted for himself and his tenant in common, R. D. Johnson, and his agency was ratified at the time of the execution of the Deed to Derr, and also by the deed to Smith.

Error.

PER CURIAM.                      *Venire de novo.*