STATE OF NORTH CAROLINA ON RELATION OF THE COMMITTEE ON GRIEVANCES OF THE NORTH CAROLINA STATE BAR ASSOCIATION v. H. L. STRICKLAND, ATTORNEY AT LAW.

(Filed 15 April, 1931.)

1. **Attorney and Client E b—Where statutory provisions for disbarment are followed the statutes should be strictly complied with.**

    The courts have inherent as well as statutory power to strike from their rolls names of attorneys who are found by reason of their conduct unfit and unworthy, and where the court proceeds under its inherent power only to the extent of appointing a committee of investigation without record of further proceedings or conclusions, and the statutory method has also been pursued, the statutes should be strictly followed. C. S., 208, *et seq.*

2. **Same—Solicitor‑ may not add to charges of Grievance Committee in disbarment proceedings.**

    The statutory proceedings to disbar an attorney for improper conduct, C. S., 208, *et seq.*, require that the prosecution be instituted only by the written accusation of the Committee on Grievances of the North Carolina State Bar Association, accompanied by written affidavit of the person making a charge specified in the act, the accusation to be submitted to the solicitor who shall draw it up citing the accused to appear, and where the solicitor does so upon the written accusation of the Grievance Committee he may not add thereto other charges of misconduct, and where the accused is acquitted by a jury of the accusation of the Grievance Committee he may not be convicted of charges added by the solicitor, and is entitled to his discharge as to all counts.

STACY, C. J., dissenting.

THIS was a ꓸdisbarment proceeding, tried by *Clement, J.,* at Fall Term, 1930, of MECKLENBURG.

On 5 March, 1930, the Grievance Committee of the North Carolina State Bar Association filed an accusation against the respondent, a duly licensed attorney, engaged in the practice of law in the city of Charlotte. The accusation was based upon C. S., 207. Attached to the accusation was the affidavit of S. J. Biggers wherein it was set forth that the said Strickland "did solicit from affiant certain professional business; that affiant then had a claim in the nature of personal damage or injury to his little girl, and that the said attorney did approach affiant without any request on the part of affiant and did then and there request affiant to allow him to represent affiant as attorney in the said matter for hire." Thereupon, the solicitor of the Fourteenth Judicial District prepared an accusation and citation which was duly served upon the respondent. The said accusation charged that the said attorney had solicited professional business from S. J. Biggers and eleven other persons named

in the instrument. Thereupon the presiding judge issued an order to the respondent to appear and answer said charges. On 29 March, the accused appeared in open court and moved to strike out the names of all persons from the accusation except the name of S. J. Biggers. Said motion was overruled, and thereupon the respondent moved to nonsuit and quash all counts set out in the accusation of the solicitor except the count relating to transactions with S. J. Biggers. These motions were overruled and the respondent excepted. Thereupon the respondent asked that a bill of particulars be furnished by the solicitor. This request was granted, and the bill of particulars furnished by the solicitor contained the names of twelve persons, including S. J. Biggers, Pete Fellos and D. J. May. The accused filed an answer denying all the allegations set out in the accusation of the Grievance Committee and of the solicitor. Other motions were made by the said attorney and were all overruled by the trial judge.

The cause came on for trial upon the following issues:

1. "Did the respondent, H. L. Strickland, while engaged as a licensed attorney, solicit professional business from Pete Fellos, as alleged?"

2. "Did the respondent, H. L. Strickland, while engaged as a licensed attorney, solicit professional business from S. J. Biggers, as alleged?"

3. "Did the respondent, H. L. Strickland, while engaged as a licensed attorney, solicit professional business from D. J. May, as alleged?"

The jury answered the first issue "Yes"; the second issue "No," the third issue "No," and recommended mercy.

Thereupon, a judgment was entered disbarring the respondent and forbidding him to practice law in any court or before any judge, justice, board, commission or other public authority, from which judgment the respondent appealed.

*F. R. McNinch, W. C. Davis, P. C. Whitlock and N. A. Townsend for North Carolina State Bar Association.*

*T. L. Kirkpatrick, B. G. Watkins and E. R. Preston for respondent.*

BROGDEN, J. There are two methods by which an attorney may be disbarred:

1. By the exercise of inherent power of the courts in the orderly administration of public justice. This method may be characterized as the judicial method.

2. The statutory method prescribed by C. S., 208, *et seq.*

The first method was set up *In the Matter of Ebbs,* 150 N. C., 44, wherein it is written: "We do not entertain any doubt that, in the absence of restrictive legislation, the courts have an inherent power to strike from their rolls names of attorneys who are found by reason of

their conduct unfit and unworthy members." See, also, *S. v. Johnson,* 171 N. C., 799; *McLean v. Johnson,* 174 N. C., 345. In the case at bar an addendum to the record discloses that on 18 July, 1929, Judge Thomas J. Shaw, while holding the courts for Mecklenburg County, issued an order appointing three members of the Charlotte bar as commissioners to investigate the conduct of the respondent, H. L. Strickland. However, the record does not disclose that any proceedings were had in pursuance of said order. Hence, the only question involved is whether the respondent was disbarred in accordance with the statutory method.

What, then, is the statutory method? C. S., 204, provides in substance that no attorney may be deprived of his right to practice law except upon two conditions: (a) "For a cause set forth in this chapter"; (b) "according to the provisions thereof." The "provisions thereof" prescribe in sections C. S., 208, *et seq.,* that the proceeding for disbarment (1) "shall be instituted and prosecuted only by the Committee on Grievances of the North Carolina State Bar Association"; (2) upon a written accusation "accompanied by the written affidavit of any person or persons who make charges against said attorney," etc.; (3) such accusation to be delivered to the solicitor who "shall draw up such accusation citing the accused to appear," etc.

An examination of the foregoing provisions of the statute leads to the conclusion that the solicitor is not authorized to "draw up such accusation" upon his own initiative or according to his own notion. It is not his accusation, but the accusation of the Committee on Grievances of the North Carolina State Bar Association. Consequently, he has no statutory power to add to it or subtract from it. The accusation of the Grievance Committee consists of three essential elements, viz.: (a) It must be properly signed; (b) duly attested; (c) and accompanied by sufficient affidavit. The affidavit is in the nature of a statutory bill of particulars attached to the accusation of the Grievance Committee.

Discussing the effect of a bill of particulars, *Stacy, C. J.,* wrote in *S. v. Wadford,* 194 N. C., 336: "When once ordered and furnished, the bill of particulars becomes a part of the record and serves (1) to inform the defendant of the specific occurrences intended to be investigated on the trial, and (2) to regulate the course of the evidence by limiting it to the items and transactions stated in the particulars." The only affidavit attached to the accusation of the Grievance Committee was signed and verified by S. J. Biggers, setting forth that the accused had solicited from him certain professional business. Therefore, the solicitor was without authority to drive afield and sweep into the case a multitude of transactions that so far as the record discloses had never been considered by the Grievance Committee of the North Carolina State Bar

Association, more especially, when the respondent had been afforded no opportunity to face his accusers before the Grievance Committee, which is the tribunal created by law to hear the charges in the first instance.

The courts everywhere are in accord upon the proposition that if a valid statutory method of determining a disputed question has been established, such remedy so provided is exclusive and must be first resorted to and in the manner specified therein. *Mfg. Co. v. Commissioners,* 189 N. C., 99; *Mfg. Co. v. Commissioners of Pender County,* 196 N. C., 744; *First National Bank v. Weld,* 264 U. S., 450; *Gorham v. Mfg. Co.,* 266 U. S., 265.

Manifestly, the trial of the cause exceeded the bounds of the statute and the motions made by respondent to nonsuit and quash all charges except those set forth in the affidavit of Biggers should have been granted, and the failure to do so by the trial judge is error.

It appears from the record that the respondent was acquitted upon the charge preferred by Biggers, and it necessarily follows that the judgment disbarring him from the practice of his profession was erroneously entered, and the defendant should be discharged.

Reversed.

STACY, C. J., dissenting: Stripped of all redundance, the case is simply one of "substance" versus "form," with the hands of the clock turned backward for a decision.

The respondent is a lawyer. On 18 July, 1929, the Superior Court of Mecklenburg County, Hon. Thos. J. Shaw, judge presiding, ordered an investigation into his conduct. C. S., 208. On 5 March, 1930, the Committee on Grievances of the North Carolina State Bar Association formulated an accusation and delivered it to the solicitor of the district, alleging that the said H. L. Strickland, while engaged as a licensed attorney in the city of Charlotte, "did by himself and through others solicit professional business from time to time and from divers persons," etc. C. S., 209. Thereupon, the solicitor drew up an accusation and motion for disbarment, or suspension, and duly cited the accused to appear and answer as provided by C. S., 210. In his citation the solicitor named Pete Fellos, among others, as one of the persons importuned by the respondent. Many technical objections were interposed and overruled before the hearing. Finally a bill of particulars was requested. In this the respondent, *inter alia,* was, for the second time, specifically charged with soliciting business from Pete Fellos in violation of C. S., 207. The verdict, induced by ample evidence, sustains this particular accusation. There is no question about the violation of the statute.

The respondent challenges the validity of the proceeding, purely civil in its nature *(In re Ebbs,* 150 N. C., 44, 63 S. E., 190), solely upon the attenuate ground that the name of Pete Fellos, *ipsissimis verbis,* nowhere appears in the accusation as formulated by the Grievance Committee of the Bar Association. *And he wins!* Has not "substance" again been sacrificed to "form," or "form" been exalted over "substance?" The majority says not. I disagree.

The General Assembly never intended that a gossamery question of procedure, such as here presented, should be held wholly sacrosanct in disbarment proceedings, and less so in other cases. Even in criminal prosecutions, where, for obvious reasons, matters of procedure are required to be observed with greater particularity than in civil actions, bills and warrants are no longer subject to quashal "by reason of any informality or refinement," C. S., 4623, and judgments are not to be stayed or reversed for nonessential or minor defects. C. S., 4625. Many cases have been upheld in the face of far more grievous defects than the one here alleged. *S. v. Beal,* 199 N. C., 278; *Jenette v. Hovey,* 182 N. C., 30. The modern tendency is against technical objections which do not affect the merits of the case. *S. v. Hardee,* 192 N. C., 533.

Nor was it the purpose of the Legislature to require an affidavit from the persons solicited to make the statute operative or effective. But this is what the present decision does. The quotation, "accompanied by the written affidavit of any person or persons who make charges against said attorney," stops short of the words, "if any," as used in the statute.

The order of Judge Shaw, which is a part of the record proper, being an order in the cause, is given no effect because, it is said, "the record does not disclose that any proceedings were had in pursuance of said order." Pete Fellos testified: "I went before the Grievance Committee, which consisted of Mr. Henry Fisher." This was the commission appointed by Judge Shaw under C. S., 208, as amended by chapter 287, Public Laws, 1929. Whether the solicitor gained his information from this source or the name of Pete Fellos was included in the accusation of the Grievance Committee of the Bar Association under the appellation of "divers persons," can make no difference so far as the merits are concerned.

But even if the alleged procedural irregularity, seized upon by the respondent, be conceded, the capital importance of which is denied, what has become of the inherent, as well as the statutory, power of amendment in the Superior Court in civil actions or special proceedings? C. S., 547; *Casualty Co. v. Green, ante,* 535; *Gilchrist v. Kitchen,* 86 N. C., 20.

The case turns on a *Lilliputian* point made *Brobdingnagian.* That is all there is in it. Why debate it further? *Cui bono?*